IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WARREN MATTHEW GIDDINGS, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PJM-21-2850 |
| NURSE GREEN, *et al.*, | * | |
| Defendants. | * | |
| | *** | |

## MEMORANDUM OPINION

Self-represented Plaintiff Warren Matthew Giddings, an inmate presently incarcerated at Jessup Correctional Institution in Jessup, Maryland, filed this 42 U.S.C. § 1983 action on October 29, 2021,[1] against Maryland Correctional Training Center ("MCTC") Correctional Officer Wills and MCTC Nurse Green. ECF Nos. 1, 1-1. In the Complaint, Plaintiff claims that in retaliation for a previous incident involving other MCTC officers, Nurse Green refused to provide him medical treatment and Officer Wills forcibly removed him from the medical unit. *Id.* In a supplement to the Complaint, Plaintiff added MCTC Warden William Bohrer as a Defendant. ECF No. 12. He seeks $10 million in damages. ECF No. 1 at 3.

On April 6, 2022, Nurse Green filed a Motion to Dismiss or, Alternatively, for Summary Judgment (ECF No. 17), and on May 2, 2022, Wills and Bohrer (collectively, the "Correctional Defendants") filed a similarly titled Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 20). Thereafter, Plaintiff filed a Motion to Add Defendants and to Compel Defendants to Produce Evidence (ECF No. 24), as well as a Motion to Stay Judgment and to Serve Defendants' Motion (ECF No. 25). Plaintiff then opposed Defendants' Motions (ECF Nos. 26,

---

[1] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (holding that a prisoner's submission is deemed to have been filed on the date it was deposited in the prison mailing system).

27) and moved to compel the production of evidence (ECF No. 30). Following the filing of Nurse Green's reply to Plaintiff's opposition response (ECF No. 32), Plaintiff filed a Motion for Leave to File Surreply (ECF No. 34).

No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, Defendants' dispositive motions, as well as the Motion to Strike the appearance of Correctional Defendants' counsel (ECF No. 36), shall be granted. Plaintiff's motions shall be denied.

## BACKGROUND

### A. Plaintiff's Allegations

Plaintiff claims that while he was housed at MCTC on October 27, 2021, he submitted a sick call slip complaining about "sharp, crippling pains" on his back. Complaint, ECF No. 1 at 3. When Nurse Green saw him at approximately 12:30 p.m. on October 28, 2021, she kept asking Plaintiff about an "incident involving her co-workers" that took place on October 15, 2021. *Id.* at 4. According to Plaintiff, Nurse Green disregarded his complaints of pain and was focused on discussing "the incident." *Id.* When Plaintiff asked why she kept asking about it, Nurse Green said, "I'm done with him," prompting Officer Wills to yank Plaintiff out of his chair, drag him down the hallway, and return him to his cell. *Id.* At 1:30 p.m., Plaintiff's cellmate informed officers that Plaintiff was having a "medical emergency" due to his back pain. *Id.* at 5. About an hour later, Plaintiff was later informed by his cellmate that "Nurse Green refused to help . . . because [Plaintiff is] an asshole." *Id.* As a result, Plaintiff suffered incredible pain for over 24 hours. *Id.*

In a supplement to his Complaint, Plaintiff added Warden Bohrer as a Defendant, raising claims of retaliation, failure to protect, and failure to intervene. ECF No. 12. According to Plaintiff, Warden Bohrer has repeatedly denied his Administrative Remedy Procedure ("ARP") grievances and subjected him to unsafe housing assignments. *Id.*

2

**B. Nurse Green's Response**

Nurse Green does not dispute that Plaintiff presented to the medical unit on October 28, 2021. *See* Medical Records, ECF No. 17-4 at 17. According to Nurse Green, Plaintiff's chief complaints were related to his medication, x-rays, and lab work, but he also reported back pain. *Id.* Nurse Green states that it is standard practice for nurses to ask about the onset and origin of a patient's complaints, including complaints of back pain, so that they can determine the cause of such complaints and whether further evaluation by a higher-level provider is required. Decl. of Green, ECF No. 17-3 at ¶ 10. With regard to the October 28 visit, Nurse Green noted:

> Evaluation of symptom onset attempted by patient is unclear and inconsistent with symptoms at this time. When asked further questioning in regards to back pain patient tone became agitated and confrontational. Attempts to complete medical assessment stopped at this time due to patient behavior and he was escorted out of the treatment room unassisted via custody escort, no acute distress.

ECF No. 17-4 at 17. Plaintiff was referred to a provider for follow up. *Id.* at 17-18.

Nurse Green also states that she conducted scheduled sick call appointments on October 28, 2021, and did not see patients for acute or emergency medical complaints. ECF No. 17-3 at ¶ 11. If Plaintiff had an emergency or acute condition on that day, a correctional officer would have transported him to the dispensary for immediate evaluation. *Id.* Plaintiff's medical records do not reflect an acute or emergency event for which he required evaluation at the dispensary. *Id.*

**C. Correctional Defendants' Response**

The Correctional Defendants note that Plaintiff filed an ARP concerning his allegations about Defendants Green and Wills on October 31, 2021. ARP No. MCTC 0900-21, ECF No. 20-2 at 14. Instead of submitting the ARP to MCTC staff, Plaintiff mailed his original filing to the Department of Public Safety and Correctional Services ("DPSCS") Commissioner, claiming that tier officers constantly "trash[] them to cover this up." *Id.* In any event, the Commissioner forwarded the ARP to the institution to process and investigate. *Id.* at 2. On November 24, 2021,

3

the MCTC ARP Coordinator directed Plaintiff to resubmit his ARP for procedural reasons. *Id.* at 17. Following resubmission, Warden Bohrer dismissed the ARP, stating:

> An investigation was conducted and you continue to be vulgar and disrespectful towards staff, during an attempt to interview you, you refused to be seen and told the officer to tell the nurse "fuck you." Nursing was unable to complete the patient's assessment on day in question due to patient's agitated state caused by her asking questions about his pain that he submitted a sick call about. There was no further interaction with the patient beyond the sick call on 10/28/21.

*Id.* at 18.

Thereafter, Plaintiff filed a grievance with the Inmate Grievance Office ("IGO"). By letter dated March 15, 2022, the IGO dismissed the grievance as wholly lacking in merit based on Plaintiff's failure to properly exhaust his administrative remedies. *Id.* at 36.

According to the Correctional Defendants, Plaintiff filed 17 ARPs in 2021, 11 of which were filed during the last three months of the year. *Id.* at 2-10. All of the ARPs received were investigated and addressed by the relevant institution. *See id.*

## PLAINTIFF'S MOTIONS

Following the filing of Defendants' motions to dismiss or for summary judgment, Plaintiff filed a Motion to Add Defendants and to Compel Defendants to Produce Evidence. ECF No. 24. Specifically, Plaintiff sought to add Officer Nichols as a Defendant, claiming deliberate indifference to his medical needs. *Id.* Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." F. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." F. R. Civ. P. 15(a)(2).

4

Rule 15 dictates that "[t]he court should freely give leave when justice so requires." *Id.* "Where the proposed amendment to the complaint appears to be a futility, however, this court has the discretion to deny leave to amend." *Pevia v. Wexford Health Source, Inc.*, Civil Action No. ELH-16-3810, 2018 WL 6271048, at *1 (D. Md. Nov. 30, 2018). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Id.* (citing *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("[A] district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.")).

As explained below, Plaintiff's claims against the Correctional Defendants are subject to dismissal for failure to exhaust administrative remedies. The claims that Plaintiff proposes to bring against Officer Nichols are likewise unexhausted. As amendment in this case would be futile, Plaintiff's motion shall be denied.

With regard to Plaintiff's Motion to Compel Defendants to produce evidence (ECF Nos. 24, 30), no scheduling order has been entered, and there has been no order issued by the Court with respect to discovery. Thus, Defendants are not obliged to engage in discovery in this case. *See* Local Rule 104.4 (D. Md. 2021). Accordingly, Plaintiff's motion, construed as a motion for discovery, will be denied.

Also pending is Plaintiff's Motion to Stay Judgment and to Serve Defendants' Motion, asking the Court to stay proceedings until he responds to Defendants' dispositive motion, which he had not received. ECF No. 25. Because Plaintiff has since filed his opposition to Defendants' motion, it appears he has received the requested document. Thus, this Motion shall be denied as moot.

Lastly, Plaintiff has filed a Motion for Leave to File Surreply, which includes his proposed arguments. ECF No. 34. A surreply is permitted when the moving party would be unable to

5

contest any matters raised by the opposing party in their reply for the first time. *See Lewis v. Rumsfeld*, 154 F. Supp.2d 56, 61 (D. D.C. 2001). Nurse Green did not raise any new matters for the first time in her reply. *See* ECF No. 32. To the contrary, Nurse Green urges the Court to disregard claims that Plaintiff raised for the first time in his opposition response. In light of the foregoing, Plaintiff's Motion for Leave to File Surreply is denied.

## STANDARDS OF REVIEW

Complaints raised by pro se litigants are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), plaintiffs must raise factual allegations that are "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

When the moving party styles its motion as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, as is the case here, and attaches additional materials to their motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment motions are granted when the moving party shows that there is no genuine issue of material fact, therefore entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court must view facts in the light most favorable to the nonmoving party, including drawing all "justifiable inferences" in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Material" facts "might affect the outcome of the suit under the governing law," and they constitute

genuine issues if there is sufficient evidence for the trier of fact to rule in favor of the nonmoving party. *Id*. at 248.

## DISCUSSION

I. **Correctional Defendants**

In their Motion to Dismiss or, in the Alternative, for Summary Judgment, the Correctional Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. ECF No. 20-1 at 7-8. If Plaintiff's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The PLRA provides that a prisoner cannot bring a claim "with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). A "Prisoner" is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). For purposes of the PLRA, "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Although exhaustion under § 1997e(a) is not a jurisdictional prerequisite, the plaintiff must nonetheless exhaust before this Court will hear the claim. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). The exhaustion requirement "allow[s] a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily

7

resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219.  It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process.  *Chase*, 286 F. Supp. 2d at 530.

Because the Court may not consider an unexhausted claim, *see Bock*, 549 U.S. at 220, in a very real sense, exhaustion prior to federal suit is mandatory.  Therefore, a court ordinarily may not excuse a failure to exhaust.  *Ross v. Blake*, 578 U.S. 632, 639 (2016) (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines."  *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  Importantly, however, the Court must ensure that "any defects in exhaustion were not procured from the action or inaction of prison officials."  *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).  Moreover, an inmate need only exhaust "available" remedies.  42 U.S.C. § 1997e(a); *see Ross*, 578 U.S. at 636.  An administrative remedy is not "available" where the prisoner, "through no fault of his own, was prevented from availing himself of it."  *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda*, 478 F. 3d at 1225); *Kaba*, 458 F.3d at 684.

In Maryland prisons, plaintiffs must file an ARP in order to exhaust their administrative remedies.  Md. Code Regs. § 12.02.28.02(B)(1), (D) (2018).  First, a prisoner must file an ARP with the warden within 30 days of the incident at issue.  Md. Code Regs. § 12.02.28.05(D)(1) (requiring filing with the "managing official"); Md. Code Regs. § 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for management of the correctional facility"); Md. Code Regs. § 12.02.28.09(B) (setting the 30-day deadline).  Second, if

the ARP is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days.  Md. Code Regs. § 12.02.28.14(B)(5).  If the appeal is denied, the prisoner must appeal within 30 days to the IGO.  *See* Md. Code. Ann., Corr. Servs. ("C.S") §§ 10-206, 10-210; Md. Code Regs. § 12.07.01.05(B).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing.  C.S. § 10-207(b)(1); *see* Md. Code. Regs. § 12.07.01.07B.  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  If the grievance is dismissed, the "order of dismissal shall be forwarded to the complainant within 60 days after the complaint was submitted to the Office." C.S. § 10-207(b)(2)(i).

Exhaustion requires full completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006).  This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'"  *Woodford,* 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original).

Here, Plaintiff mailed his ARP regarding the underlying incident to the DPSCS Commissioner on October 31, 2021.  Aside from failing to comply with the relevant regulation, which directs inmates to submit their ARPs to the Warden of the institution, Plaintiff failed to properly exhaust his administrative remedies because he initiated this suit prematurely.  Plaintiff chose to mail his Complaint on October 29, 2021, before he mailed the ARP and certainly prior to the adjudication of his ARP and subsequent grievance.  As it appears that Plaintiff did not completely pursue his administrative remedies before filing suit, his claims against the Correctional Defendants are unexhausted and cannot be considered by the Court.  Therefore, the Correctional Defendants' dispositive motion shall be granted.

**II.     Nurse Green**

Plaintiff asserts a violation of the Eighth Amendment for deliberate indifference to his medical needs based on Nurse Green's refusal to treat his back pain on October 28, 2021.  The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment.  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016).  To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available.  *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).  Objectively, the medical condition at issue must be serious.  *Hudson v. McMillan*, 503 U.S. 1, 9 (1992).  A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Iko*, 535 F.3d at 241 (citation omitted).  As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety."  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer*, 511 U.S. at 837).  The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious."  *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

Deliberate indifference "is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844); *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999) ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences . . . To lower this threshold would thrust federal courts into the daily practices of local police departments."). Moreover, mere negligence or malpractice does not rise to the level of a constitutional violation. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986) (citing *Estelle*, *supra*, 429 U.S. at 106).

An inmate's mere disagreement with medical providers as to the proper course of treatment also does not support a claim under the deliberate indifference standard. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir. 1977). Rather, a prisoner-plaintiff must show that the medical provider failed to make a sincere and reasonable effort to care for the inmate's medical problems. *See Startz v. Cullen*, 468 F.2d 560, 561 (2d Cir. 1972); *Smith v. Mathis*, PJM-08-3302, 2012 WL 253438, at * 4 (D. Md. Jan. 26, 2012), *aff'd*, 475 F. App'x 860 (4th Cir. 2012).

Generally, "[a]n actionable deliberate-indifference claim does not require proof that the plaintiff suffered an actual injury. Instead, it is enough that the defendant's actions exposed the plaintiff to a 'substantial risk of serious harm.'" *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 210 (4th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837). But, in a case involving a claim of deliberate indifference to a serious medical need, the inmate must show a "significant injury." *Danser v. Stansberry*, 772 F.3d 340, 346 n.8 (4th Cir. 2014).

Here, Plaintiff claims that Nurse Green was deliberately indifferent to his serious medical needs because she kept asking about a prior incident involving correctional officers instead of listening to him recount his symptoms. However, as Nurse Green explained, it is standard practice for nurses to ask about the onset and origin of a patient's complaints, including complaints of back pain, so that they can determine the cause and whether further evaluation by a higher-level provider is required. Plaintiff had alleged that correctional staff assaulted him during the incident in question. Thus, it was reasonable for Nurse Green to inquire about the incident as a possible cause of his back pain. Moreover, Plaintiff's medical records from that day did not reflect an emergency event for which he required evaluation following his visit with Nurse Green. On this record, Plaintiff has not shown that Nurse Green failed to make a sincere and reasonable effort to care for his medical problem. In other words, Plaintiff has not presented facts that set forth a cognizable claim of deliberate indifference to a serious medical need. Therefore, Nurse Green's motion, construed as one for summary judgment, shall be granted.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motions are granted, and Plaintiff's motions are denied. A separate Order follows.

__2/2/2023__  
Date

_____  
PETER J. MESSITTE  
UNITED STATES DISTRICT JUDGE

---

[2] To the extent that Plaintiff also brings medical negligence claims, the Court declines to exercise supplemental jurisdiction over them. See 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). These claims are dismissed without prejudice. See Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 726-27 (1966)).